IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARCUS RUFF,                )
                            )
        Plaintiff,           )
                            )
    v.                      )   No. 07 C 156
                            )
DEPAUL UNIVERSITY,           )
                            )
        Defendant.           )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant DePaul University's ("DePaul") partial motion to dismiss Count II. For the reasons stated below, we grant DePaul's motion to dismiss Count II. We also decline to exercise jurisdiction over the remaining state law claim and remand the instant action to state court.

## BACKGROUND

Marcus Ruff ("Ruff") was allegedly employed by DePaul as a Security Coordinator in the Residence Life Department beginning on November 5, 2001. On January 24, 2004, Ruff allegedly fell down some stairs, which caused him to lose consciousness and to be taken to a hospital. Ruff claims that he reported the accident

1

to his supervisor, Leonard Jones ("Jones").  Ruff also alleges that, on February 2, 2004, he informed RaQuana Sumrall ("Sumrall"), DePaul Benefits Analyst, of his condition.  Ruff alleges that his doctors advised him to remain home pending the results of a MRI evaluation.

On February 10, 2004, Sumrall allegedly placed Ruff on leave under the Family Medical Leave Act ("FMLA").  During late February and early March 2004, Ruff claims that Jones asked Ruff to provide information regarding Ruff's job duties to a temporary replacement.  Ruff further contends that on April 9, 2004, he received a letter from Sumrall, informing him that he would need to return to work on April 12, 2004, since Ruff's medical examination report stated that Ruff was able to perform "sedentary or desk bound duties until further notice."  (A. Compl. Count I. Par. 11).  On April 12 and 13, 2004, Ruff alleges that, rather than return to work, he attempted to take sick leave.  On April 14, 2004, Ruff allegedly returned to work but left early because he was unable to perform his job since he was heavily medicated.  On April 15, 16, and 19, 2004, Ruff returned to work and used sick leave and vacation time to attend physical examinations.  Ruff allegedly forwarded two notes to his supervisor and Sumrall from his doctor, which stated that Ruff was prohibited from work from April 19, 2004, until May 21, 2004.  Ruff claims that he continued to use sick leave and vacation time to cover his absences from work and alleges that he was not under FMLA leave during this time.

On April 30, 2004, Ruff allegedly received a letter from DePaul dated April 27, 2004, informing him that if DePaul did not receive a completed Certification of

Health Provider ("Certificate") by April 29, 2004, Ruff would be out of compliance with his responsibilities under the FMLA and DePaul would discontinue paying his salary and benefits. Sumrall allegedly also warned Ruff via a letter that after May 5, 2004, the day that Ruff's FMLA benefits would have been exhausted, Ruff's position might be filled. Ruff allegedly contacted his doctor to obtain the Certificate, but the doctor was unable to examine Ruff until May 11, 2004. Ruff claims that on May 5, 2004, he returned to work, but left early due to illness. Ruff contends that because of his inability to work, Sumrall informed Ruff that he could not work without a Certificate and a fitness release. On May 11, 2004, Ruff allegedly provided Sumrall with the Certificate, which did not release Ruff to return to work. On May 18, 2004, Sumrall notified Ruff that he had been discharged for abusing DePaul's leave policies and, on May 21, 2004, a neurologist employed by Traveler's Insurance issued a report that stated: "It is impossible to say when Mr. Ruff will be able to return to work." (A. Compl. Count II Para. 11).

On January 9, 2007, Ruff filed an amended complaint in the Circuit Court of Cook County, which included a claim against DePaul alleging retaliatory discharge in violation of the Illinois Workers' Compensation Act, 820 ILCS 305/4(h), (Count I) and a claim against DePaul alleging a violation of the FMLA, 29 U.S.C. § 2601 *et seq.*, (Count II). On January 30, 2007, the instant action was removed to federal court. DePaul moves to dismiss Count II of the amended complaint.

# LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief."). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements

4

comes later."). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

**DISCUSSION**

I. Failure to State a Cognizable FMLA Claim

DePaul argues that Ruff has failed to state a violation of the FMLA since Ruff "concedes that he received twelve weeks of job protected leave and that he was unable to return to work at the conclusion of his FMLA leave." (Mot. 1). The FMLA affords flexibility in employment for medical or family emergencies for eligible employees. *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998)(stating purpose). Pursuant to the FMLA, an eligible employee may take unpaid leave for up to twelve workweeks in any twelve-month period following certain events, including a disabling health problem, a family member's serious illness, or the arrival of a new child. 29 U.S.C. § 2612(a)(1). Such an employee, at the conclusion of a qualified-leave period, is entitled to return to his former position of employment, or to an equivalent one, with the same terms and benefits. 29 U.S.C.

5

§ 2614(a). In enacting the FMLA, "Congress sought to mandate a flexible leave allotment for medical and family reasons for all men and women working at least 1250 hours a year at firms employing fifty or more employees during at least twenty weeks of the year." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 (7th Cir. 1997). The FMLA prohibits an employer from taking adverse action against an employee because of that employee's exercise of rights protected by the FMLA. 29 U.S.C. § 2615(a)(1)-(2).

### A. Statutorily Protected Leave Period

DePaul argues that Ruff pled himself out of court on his FMLA claim because he alleged that he was absent from work for greater than twelve weeks after his injury on January 29, 2004. As noted above, the FMLA gives eligible employees the right to take twelve workweeks of leave during any twelve-month period for reasons that include "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Ruff contends that he did not receive more than twelve weeks of job protection because during his leave he did work for DePaul, either at home or at the workplace. Ruff contends that in late February and early March 2004 he was asked by DePaul to provide information regarding his job duties so that a temporary replacement could perform his job. Ruff also contends that on April 12, 13, 15, 16, and 19, 2004, he actually performed duties for DePaul. Ruff argues that the work he performed during his leave "should not be credited for FMLA leave . . . but the leave was

6

counted anyway by [DePaul] for FMLA purposes." (Ans. 3).

Ruff admits that his FMLA leave would begin effective February 10, 2004, and end May 5, 2004, twelve weeks after the effective date. Ruff also admits that on May 18, 2004, his employment was terminated for "abusing DePaul's leave policies." (A. Compl. Count II Par. 18). Even if Ruff were to receive credit for the few hours that he provided job information to DePaul and the five days in April 2004 that he claims that he performed his job duties at home or in the workplace, Ruff still received over thirteen weeks of leave. Ruff's discharge on May 18, 2004, occurred after Ruff's statutorily protected leave, which is not actionable under the FMLA. Therefore, we grant DePaul's motion to dismiss Count II.

B. Ability to Return to Work

In the alternative, DePaul argues that Ruff pled himself out of court on his FMLA claim because he alleged that he was "medically unable" to return to work due to his injury. (A. Compl. Count I Par. 20, 22, Count II Par. 18, 19). As previously stated, at the conclusion of an eligible employee's qualified-work leave period of twelve weeks, the employee is entitled to return to his former position of employment, or to an equivalent one, with the same terms and benefits. 29 U.S.C. § 2614(a). In addition, FMLA regulations provide that "if the employee is unable to perform an essential function of the position because of a physical or medical condition, including the continuation of a serious health condition, the employee has no right to restoration to another position." 29 C.F.R. § 825.2149(b); *see also*

7

*Harrell v. U.S. Postal Service*, 445 F.3d 913, 919 n.2 (7th Cir.2006)(stating standard).

Ruff admits that "he was medically unable to work as of May 21, 2004," but argues that "he was still under FMLA leave at that time." (Ans. 8). However, as noted above, Ruff received greater than the statutorily protected amount of leave required under the FMLA. In addition, Ruff alleges in the amended complaint that "Ruff was not medically able to return to work because of his work related injuries." (A. Compl. Count II Par. 18). Ruff further alleges that "[o]n May 21, 2004, three days after the termination of Ruff's employment, [a neurologist], issued a report which stated: It is impossible to say when . . . Ruff will be able to return to work." (A. Compl. Count II Par. 19). Thus, the allegations in the amended complaint clearly show that Ruff was unable to return to work at DePaul after his FMLA leave expired and, as such, Ruff did not have a right to be restored to either his previous position, or any other position, within DePaul.

Therefore, even if Ruff's complaint had survived the motion to dismiss relating to the statutorily protected leave period, we would grant DePaul's motion to dismiss on the grounds that Ruff was unable to return to work by the end of the leave period.

II. Retaliatory Discharge Claim (Count I)

In regard to the remaining state retaliatory discharge claim, the Seventh Circuit has stated that where a court dismisses a federal claim and the sole basis for

invoking federal jurisdiction has become nonexistent, that court should generally not exercise supplemental jurisdiction over remaining state law claims. *See Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003)(stating that if there is a dismissal of the original jurisdiction claim and only a supplemental jurisdiction claim remains, "the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims"); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). In addition, under Subsection (c)(3) of Section 1367 of Title 28, United States Code, a federal district court may dismiss a plaintiff's supplemental state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to dismiss supplemental claims is discretionary. *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir. 1997). In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 276 (7th Cir. 1994).

In the instant action, having dismissed Count II of the amended complaint, which was the sole basis for this court's jurisdiction, we must decide whether to retain jurisdiction to hear Ruff's state retaliatory discharge claim. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500-01 (7th Cir. 1999)(stating it is within the discretion of the district court to retain or refuse supplemental jurisdiction over remaining state

law claims when the federal law claim fails). According to the complaint, both Ruff and DePaul are domiciled in Illinois, thereby destroying federal diversity subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (stating that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . *citizens of different States*")(emphasis added). In addition, we have considered the relevant factors indicated above and have determined as a matter of discretion to decline to exercise supplemental jurisdiction over the state retaliatory discharge claim. Based upon the foregoing analysis, we remand the instant action to the Circuit Court of Cook County, Illinois.

## CONCLUSION

Based on the foregoing analysis, we grant DePaul's motion to dismiss Count II. We also decline to exercise jurisdiction over the remaining state law claim and remand the instant action to state court.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 4, 2007